***********
The undersigned have reviewed the prior Opinion and Award dated October 15, 2002 and July 17, 2003 based upon the record of the proceedings before Deputy Commissioner Berger and the briefs and arguments of the parties. The appealing party, defendant North Carolina Insurance Guaranty Association, has not shown good ground to reconsider the evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications. The appeal of defendant-employer BCJ Trucking Services, Inc. is rendered moot due to the deletion of the language in Conclusion of Law #5 from the Opinion and Award dated July 17, 2003.
 *********** ISSUES TO BE DECIDED
(a) Was the insurance provided by the Reliance National Indemnity Company, to BCJ Trucking Services, Inc., a contract for direct insurance as required by N.C. Gen. Stat. § 58-48-10?
(b) Was the insurance provided by the Reliance National Indemnity Company to BCJ Trucking Services, Inc., a contract for insurance written on a retroactive basis to cover known or unknown losses which had resulted from an event with respect to which a claim had already been made, and the claim was known to the insurer at the time the insurance was bound precluding coverage as set forth by N.C. Gen. Stat. § 58-48-10(10)?
(c) Is the plaintiff's claim a covered claim as defined by N.C. Gen. Stat. § 58-48-20(4)?
(d) Has the pursuit of this claim by defendant-IGA been based upon unreasonable grounds pursuant to N.C. Gen. Stat. § 97-88.1?
(e) The defendant-IGA conceded in its brief that the exclusion set forth under N.C. Gen. Stat. § 58-48(9) was not applicable in this matter.
 ***********
The Full Commission finds as facts and concludes as matter of law the following as:
 STIPULATIONS
1. Terry W. Bowles, a former employee of BCJ Trucking Services, Inc., filed a workers' compensation claim relating to a March 3, 1998 motor vehicle accident. On April 11, 2001, Deputy Commissioner Phillip Holmes filed an Opinion and Award wherein he awarded plaintiff ongoing temporary total disability benefits beginning December 6, 1999.
2. On March 3, 1998, BCJ Trucking Services, Inc. was a member of the North Carolina Selective Fund (the "Selective Fund"). Jerry Newman, president of BCJ Trucking Services, Inc., was authorized to act on behalf of BCJ Trucking Services, Inc. and executed the North Carolina Department of Insurance Form 18-WC Application for Membership in the Selective Fund on behalf of BCJ Trucking Services, Inc. effective March 23, 1997. BCJ Trucking Services, Inc. is an ongoing business concern and is not insolvent.
3. The Selective Fund is a non-profit corporation, which prior to December 31, 1998, operated as a self-insured employer group within the meaning of Part 1 of Article 47 of Chapter 58 of the North Carolina General Statutes. The members of the Selective Fund were various North Carolina employers who agreed to pool their workers' compensation liabilities and were licensed under Part 1 of Article 47 of Chapter 58 of the North Carolina General Statutes.
4. The North Carolina Insurance Guaranty Association is a statutorily created, non-profit, unincorporated legal entity pursuant to the North Carolina Insurance Guaranty Association Act, N.C. Gen. Stat. § 58-48-1 et seq. (hereinafter "Guaranty Act").
5. Reliance National Indemnity Company was a commercial insurance company licensed and authorized to transact insurance business in North Carolina. Reliance National Indemnity Company was a subsidiary of Reliance Insurance Company, and the two companies merged on February 12, 2001. Prior to February 12, 2001, Reliance National Indemnity Company was a member of IGA and wrote policies of workers' compensation liability insurance. Reliance National Insurance Company and Reliance Insurance Company will collectively be referred to herein as "Reliance."
6. Dennis Associates, Inc. and/or Dennis Insurance Group (hereinafter "Dennis") acted as the servicing agent for Selective Fund and later for Reliance.
7. The North Carolina Self-Insurance Guaranty Association (hereinafter "SIGA") is a statutorily-created, non-profit, unincorporated legal entity pursuant to N.C. Gen. Stat. § 97-130et seq, which sections comprise Article 4 of Chapter 97 of the North Carolina Workers' Compensation Act.
8. The North Carolina Department of Insurance (hereinafter "DOI") is the state agency responsible for the enforcement and execution of the insurance laws of North Carolina as delineated in Chapter 58 of the North Carolina General Statutes.
9. The Selective Fund used North Carolina's standard Workers' Compensation and Employers Liability Policy, the uniform policy filed by the North Carolina Rate Bureau with the DOI. Each Selective Fund member was given a copy of the policy to which was attached the certificate of coverage information page, required by N.C. Gen. Stat. § 58-47-125(a), for that member employer.
10. The Selective Fund policy number for BCJ Trucking Services, Inc. was NCSF 9790144.
11. On April 29, 1997, the Selective Fund was placed in administrative supervision by the DOI pursuant to the provisions of Articles 47 and 30 of Chapter 58 of the General Statutes, due to the "hazardous financial condition" of the Selective Fund.
12. By letter to the Selective Fund dated January 21, 1998, the DOI informed the Selective Fund that, absent a required $500,000 cash infusion or a firm commitment from a commercial insurance carrier to transact a loss portfolio transfer/assumption reinsurance agreement, the Selective Fund would continue to be restricted from writing new business and would also be required to notify all renewals that employer coverage would be canceled.
13. The DOI ultimately determined that it was in the best interest of the public and the Selective Fund policyholders to allow the Selective Fund to transfer its policies and liabilities to another insurer, pursuant to N.C. Gen. Stat. § 58-10-45, N.C. Gen. Stat. § 58-47-70(b)(c) and Part 2 of Article 10 of Chapter 58 of the General Statutes.
14. With the approval of the DOI, the Selective Fund entered into a Loss Portfolio Transfer Assumption Reinsurance Agreement with Reliance (the "Assumption Reinsurance Agreement").
15. The Assumption Reinsurance Agreement between the Selective Fund and Reliance was effective December 31, 1998. Under the Assumption Reinsurance Agreement, Selective Fund transferred and Reliance assumed "100 % of the claims related liabilities and obligations of the Self-Insurer (Selective Fund), thereby assuming the joint and several liability of the Self — Insurer's (Selective Fund's) members, for its retained amounts of specific and aggregate liability for workers' compensation and employers' liability losses, including unpaid losses and loss adjustment expense, from the time period of November 1, 1994 through December 31, 1998, including all existing and incurred but not reported (IBNR") claims pertaining to the Policies set forth below" in Article 1, Section A.
16. Plaintiff's claim against BCJ Trucking Services, Inc. was one of the claims assumed by Reliance pursuant to the Assumption Reinsurance Agreement.
17. The Selective Fund, Reliance and the DOI intended that the Assumption Reinsurance Agreement would effect a novation of the Selective Fund policies. The Assumption Reinsurance Agreement was approved by NCDOI pursuant to Article 10 of Chapter 58 of the General Statutes.
18. In consideration for Reliance's agreement to assume the liabilities and obligations of the Selective Fund, Selective Fund paid and transferred to Reliance approximately $3,900,000 in cash, securities, the statutory deposit and other assets. This consideration was referred to in the Assumption Reinsurance Agreement as "Premium."
19. Following the execution of the Assumption Reinsurance Agreement, the DOI, pursuant to N.C. Gen. Stat. § 58-47-90, released the $745,000 statutory deposit of the Selective Fund, which was paid and transferred by the Selective Fund to Reliance as part of the consideration for the Assumption Reinsurance Agreement.
20. Effective December 31, 1998, the Selective Fund ceased doing business as a self-insured employer group. Selective Fund is currently in the process of dissolution and remains in existence solely to wind down its affairs.
21. Following the December 31, 1998 Assumption Reinsurance Agreement, Reliance sent a Notice of Assumption to the former employer members of the Selective Fund. The Notice of Assumption provided in part, that "pursuant to the terms of the [Assumption Reinsurance] Agreement effective December 31, 1998, Reliance National Indemnity Company, 77 Water Street, New York, New York 10005, (212-858-3600) has agreed to assume your claims. Under the Agreement, Reliance National Indemnity Company has agreed to become the insurer in full substitution of the North Carolina Selective Fund."
22. On or about March 16, 1999, the Selective Fund sent written notices to all former members of the Selective Fund advising them that "there will be no more exposure to you in regards to the joint and several liability to the [Selective Fund], now or in the future, as a result of [the Assumption Reinsurance Agreement] with the [Selective Fund] and [Reliance]." The form and content of the notices were approved by the NCDOI.
23. On or about April 6, 1999, the NCDOI notified the Selective Fund that the Selective Fund and Reliance had "complied with all contingencies related to the [NCDOI's] approval of the [Assumption Reinsurance Agreement] that was effective December 31, 1998. The transaction is hereby given the [DOI's] final approval."
24. After the effective date of the Assumption Reinsurance Agreement, Reliance used the same claim numbers and policy numbers previously used by the Selective Fund.
25. Following the execution of the Assumption Reinsurance Agreement, Reliance assumed responsibility for payment of claims assumed from the Selective Fund, including the plaintiff workers' compensation claim, and commenced the payment of plaintiff's temporary total disability payments.
26. On October 3, 2001, the Commonwealth of Pennsylvania issued a final Order of Liquidation with a finding of insolvency as to Reliance, and appointed the Insurance Commissioner for the Commonwealth of Pennsylvania as liquidator.
27. Following the entry of the final Order of Liquidation against Reliance, the IGA activated to fulfill its statutory obligations pursuant to the Guaranty Act.
28. As a condition of doing business in North Carolina, Reliance was required to deposit with the DOI securities in the face amount of $1,191,000.00 (the "Special Deposit") pursuant to Article 5 of the Insurance Law, which Special Deposit secures lien rights in the deposit of North Carolina claimants against the insolvent insurer. N.C. Gen. Stat. §§ 58-5-70 and58-30-10(19). On October 8, 2001, the IGA requested that the DOI liquidate the Special Deposit and pay to IGA the proceeds of the Reliance Special Deposit. On October 29, 2001, DOI delivered the proceeds of the Special Deposit in the amount of $1257,631.39 to the IGA (plus accrued interest of $372.58 on November 5, 2001).
29. On or about November 1, 2001, IGA assessed its member insurance companies $22,000,000 to provide funds necessary to begin the IGA's task of discharging its obligations arising from the Reliance insolvency. Of the $22,000,000 assessed, $10,000,000 was to discharge the IGA's statutory obligations in connection with Reliance workers' compensation claims.
30. On November 5, 2001, James E. Long, Commissioner of Insurance of the State of North Carolina ("the Commissioner"), was appointed by the Wake County Superior Court, pursuant to N.C. Gen. Stat. § 58-30-1(c) and 58-30-275, as Ancillary Receiver of Reliance, for the protection of policyholders, claimants, creditors and the public in this state.
Prior to its insolvency, Reliance was a member of the IGA.
32. Following its insolvency, Reliance continued making benefits payments to plaintiff until November 19, 2001. Thereafter, the IGA commenced making the regular weekly payments to plaintiff and continues to do so.
33. Plaintiff resolved a claim against a third party tortfeasor. Superior Court Judge Lindsay R. Davis reduced the lien to $5000.00 and entered an order to that effect. The NCIC entered an Order of Disbursement on July 25, 2002. On July 26, 2002, a check for $5000.00 was sent to IGA in satisfaction of the lien.
34. The Selective Fund is not now and never has been declared insolvent. The Selective Fund never defaulted on the self-insured workers' compensation obligations of its member-employers while it was a licensed self-insurer. The Commissioner of Insurance never notified the SIGA pursuant to N.C. Gen. Stat. § 97-136 that the Selective Fund was insolvent pursuant to N.C. Gen. Stat. §97-135.
35. All stipulations contained in the Pre-Trial Agreement are received into evidence.
36. A black index of documents was marked as stipulated exhibit 1 and received into evidence.
37. A copy of the annual statement as of December 31, 1998 of the Reliance National Indemnity Company was marked as stipulated exhibit 2 and received into evidence.
 *********** FINDINGS OF FACT
1. In subsection A of the General Section in the workers' compensation policy originally issued by the Selective Fund, the policy states that it is "a contract of insurance between you (the employer named in item 1 of the information page) and us (the insurer named in item 1 of the Information Page)." BCJ Trucking Services, Inc. is listed as the insured. The Selective Fund is listed as the insurer.
2. Section B under Part One of the workers' compensation policy issued by the Selective Fund states that it "will pay promptly when due the benefits required of you (the policyholder) by the workers' compensation law."
3. Subsection 3 of Section H under Part One of the workers' compensation policy issued by the Selective Fund provides that it is "directly and primarily to any person entitled to the benefits payable by this insurance"
4. The Assumption Reinsurance Agreement approved by the Commissioner of Insurance that became effective on December 31, 1998 resulted in a novation of the original contract for insurance entered into by the Selective Fund and BCJ Trucking Services, Inc. Reliance National Indemnity Company substituted for the Selective Fund as a party to the original contract for insurance between the Selective Fund and BCJ Trucking Services, Inc. No new contract of insurance was formed as a result of this novation. No separate negotiations between Reliance National Indemnity Company and BCJ Trucking Services, Inc. took place resulting in a new and separate contract for insurance between the parties.
6. Article 6, subsection D of the Assumption Reinsurance Agreement, states that "(a) all losses and expenses regarding the Assumed Claims that the Reinsurer determines to be payable will be paid directly and promptly by the Reinsurer."
7. The defendant-carrier Reliance National Indemnity Company paid assessments to the defendant-carrier IGA based in part on the amount of premium received as a result of the Assumption Reinsurance Agreement with the Selective Fund, which in turn included insurance premiums paid by defendant-employer BCJ Trucking Services, Inc.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The insurance coverage provided by Reliance National Indemnity Company to the defendant-employer BCJ Trucking Services, Inc. constituted direct insurance. Plaintiff's claim was a claim covered by the policy originally issued by the Selective Fund. When the Commissioner of Insurance approved the Assumption Reinsurance Agreement entered into by the North Carolina Selective Fund and the Reliance National Indemnity Company, Reliance National Indemnity Company substituted Selective Fund as a party to the original agreement entered into by the Selective Fund and the defendant-employer BCJ Trucking Services, Inc. Once this agreement was approved, Reliance National Indemnity Company became directly and solely liable for claims against the defendant-employer BCJ Trucking Services, Inc. Reliance National Indemnity Company assumed the obligations and risks originally incurred by the Selective Fund. The statutory provisions of N.C. Gen. Stat. § 58-48-10 enumerate the specific types of direct insurance that will not be covered under Article 48. There is no exclusion of direct insurance policies that undergo a substitution of a party pursuant to an Assumption-Reinsurance agreement approved by the Commissioner of Insurance. N.C. Gen. Stat. § 58-10-40; N.C. Gen. Stat. §58-48-10.
2. The insurance coverage provided by Reliance National Indemnity Company to defendant-employer BCJ Trucking Services, Inc. was not retroactive insurance written in order to cover known losses, which had resulted from an event to which a claim had already been made. The Assumption Reinsurance Agreement resulted in a novation of the original contract of insurance entered into by defendant-employer BCJ Trucking Services, Inc. and the North Carolina Selective Fund. The terms of this original contract of insurance remained the same while the parties to the contract were changed. There was no new insurance policy written by Reliance National Indemnity Company when the Assumption Reinsurance Agreement was entered into and approved by the Commissioner of Insurance. Plaintiff's claim for injury occurred after the original contract for insurance was entered into by defendant-employer BCJ Trucking Services, Inc. and the North Carolina Selective Fund. N.C. Gen. Stat. § 58-48-10(10); N.C. Gen. Stat. § 58-10-25(b).
3. Plaintiff's claim is a covered claim within the coverage of an insurance policy issued by an insurer that became insolvent after the enactment of Article 48. This statutory provision does not require that the policy be the original physical policy sent out by an insurer. Black's Law Dictionary 785 (5th ed. 1979) defines the verb "issue" as follows: "to send forth; to emit; to promulgate, to send out, to send out officially" While the December 31, 1998 Assumption Reinsurance Agreement does not constitute a new insurance policy, it does constitute a contract for insurance that substitutes Reliance National Indemnity Company as a party with contractual obligations to the defendant-employer BCJ Trucking Inc. Defendant-carrier Reliance National Indemnity Company issued a written notice of assumption to defendant-employer BCJ Trucking Services, Inc. In this notice, Reliance National Indemnity Company informed BCJ Trucking Services, Inc. that it had entered into an agreement assuming its claims. This notice set forth the contractual obligations that BCJ Trucking Services, Inc. could rely upon. The Assumption Reinsurance Agreement establishing a contractual relation between Reliance National Indemnity Company and BCJ Trucking Services, Inc. combined with the subsequent notice to BCJ Trucking Services, Inc. is sufficient to meet the statutory requirement that an insurance policy be issued or sent out by the insurer that has become insolvent. N.C. Gen. Stat. § 58-48-20(4).
4. Because the Assumption Reinsurance Agreement does not create a new contract but merely substitutes one party for another, then as an operation of law, Reliance National Indemnity Company should be "deemed" to have issued the original physical policy sent out by the North Carolina Selective Fund. There are four public policy considerations that call for a liberal construction of the terms "as issued" as it is used under N.C. Gen. Stat. §58-48-20(4).
Firstly, a statutory interpretation that the term "as issued" literally means to physically send out or set forth the original insurance policy would undermine the overall statutory scheme that the General Assembly has adopted in order to make sure injured employees receive compensation for their compensable injuries and are not vulnerable to insolvent employers and/or carriers. All employers required to have workers' compensation coverage for its employees must either qualify as a self-insured employer or purchase workers' compensation coverage from an insurance company. There is no other method of maintaining workers' compensation coverage set forth in Article 97. The General Assembly created the North Carolina Self-Insurance Guaranty Association in order to cover claims against self-insured employers who became insolvent. It created the North Carolina Insurance Guaranty Association to cover claims against employers who had entered into an indemnification agreement with an insurance company that had become insolvent. Subsequent to the creation of both of these entities, the General Assembly made it a felony crime for an employer to conduct business in this state without maintaining workers' compensation coverage as required by law. While the General Assembly has sought to increase punishment against employers who willfully allow their employees to be vulnerable to having no workers' compensation coverage, the statutory construction set forth by the defendant-carrier IGA would leave injured employees vulnerable to insolvent employers.
Secondly, the North Carolina General Assembly empowered the Commissioner of Insurance with the authority to approve a transfer of policies from an insurer that is in a hazardous financial condition to another insurer if he determines that it is in the best interest of the policyholders under contract with the at risk insurer. If the Commissioner had not approved the Assumption-Reinsurance Agreement entered into by the Selective Fund and Reliance National Indemnity Company, then the policyholder defendant-employer BCJ Trucking Services, Inc. would have been protected by the SIGA if the Selective Fund had become insolvent as a result of its hazardous financial condition. Because the Commissioner did approve the Assumption Reinsurance Agreement, the defendant-employer BCJ Trucking, Services, Inc., would be required to pay the plaintiff's claim if the Full Commission adopted the narrow interpretation of N.C. Gen. Stat. §58-48-20(4) as argued by defendant-carrier IGA. BCJ Trucking Services, Inc. paid its premiums for insurance protection by the Selective Fund with an umbrella protection statutorily provided by the creation of the SIGA only to have such protection removed without a statutory right of notice by the Commissioner of Insurance. Such a result would be patently unfair to this employer given that it maintained workers' compensation coverage as required by N.C. Gen. Stat. § 97-93.
Thirdly, the North Carolina General Assembly empowered the Commissioner of Insurance with the authority to approve a transfer of policies from an insurer that is in a hazardous financial condition to another insurer in order that such transactions could take place so that insurers could in part try to avoid insolvencies. It is in the interest of the individual member insurance companies of the IGA to be able to enter into such Assumption-Reinsurance agreements if necessary. Defendant-carrier IGA has focused attention on the fact that the original policy covering plaintiff's claim was issued by a self-insured fund and argues that its members who are insurance companies should not be collectively assessed to pay for claims originating from a policy originally issued by a self-insured fund. If Assumption-Reinsurance agreements result in a lack of protection for policyholders of a policy issued by a self-insured fund, then the practical effect of the statutory construction sought by defendant-carrier IGA is that in the future the Commissioner of Insurance will not approve such agreements. In the case at hand, the Commissioner of Insurance could have sought liquidation of the assets of the Selective Fund instead of approving an assumption-reinsurance agreement between the Selective Fund and Reliance National Indemnity Company. As aforementioned, the policyholders with the Selective Fund would have been protected by the SIGA if such a course had been followed and would certainly be the course the Commissioner of Insurance would take in the future if assumption-reinsurance agreements do take the policyholders out from under the protection of both the SIGA and the IGA. However, this statutory construction sought by counsel for IGA would be a pyrhic victory for the IGA because if Assumption-Reinsurance agreements do have this result when a self-insured fund enters into a reinsurance agreement with an insurance company, then the same result will occur if two members of the IGA enter into an Assumption-Reinsurance agreement approved by the Commissioner of Insurance. Such a statutory construction would lead the Commissioner of Insurance to not approve Assumption-Reinsurance agreements between member insurance companies of the IGA and instead allow a member insurance company in a financially hazardous condition to risk becoming insolvent so that the policyholders of a policy issued by such a member would be protected by the fund established by the IGA if such an insolvency occurs. The individual member insurance companies in the IGA would then be collectively assessed to pay claims against insolvent members who would have been precluded by the Commissioner of Insurance from entering into an assumption-reinsurance agreement in an attempt to avoid insolvency.
Finally, if members of the IGA engage in corporate mergers, then claims against insurance policies assumed by the parent company but not originally issued such company would not be covered by the IGA. Members of the IGA could circumvent the protection provided by the IGA to employers and injured employees by entering into such mergers in order to avoid assessments by the IGA on premiums received.
5. Defendant carrier IGA has not engaged in stubborn, unfounded litigiousness in the pursuit of this claim. N.C. Gen. Stat. §97-88.1.
 ***********
Considering the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant-IGA shall continue paying temporary total disability compensation in the amount of $509.81 to the plaintiff subject to the attorney's fees already approved in the April 11, 2001 Opinion and Award filed by Deputy Commissioner Holmes and until further order of the Industrial Commission.
This the 27th day of February 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DISSENTING:
 S/__________ THOMAS BOLCH COMMISSIONER